IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DAWN M. AUFFARTH,                        *

    Plaintiff                        *

        v.                           *        CIVIL NO.: WDQ-08-1399

NATIONWIDE MUTUAL INSURANCE CO.,          *

    Defendant.                       *

                *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Dawn Auffarth sued Nationwide Mutual Insurance Company ("Nationwide") for breach of contract and other claims. Nationwide counterclaimed for breach of contract. A bench trial was held on January 13, 2012. Pending is Nationwide's claim for damages.[1] On February 24, 2012, the parties filed proposed findings of fact and conclusions of law. ECF Nos. 106, 107. For the following reasons, the Court will award $1982.00 to Nationwide in compensatory damages and prejudgment interest.

---

[1] On May 21, 2008, Auffarth sued Nationwide in the Circuit Court for Baltimore City for breach of contract and related claims. ECF No. 2. Nationwide removed and counterclaimed for breach of contract. ECF Nos. 1, 11. On September 19, 2008, the Court dismissed all but Auffarth's declaratory judgment and breach of contract claims. ECF No. 32. On June 30, 2010, the Court granted Nationwide's motion for summary judgment on the two remaining claims against it and on its counterclaim for breach of contract. ECF No. 70. On August 30, 2011, the Court denied Nationwide's motion for summary judgment on damages. ECF No. 84.

I.    Findings of Fact

As required by Fed. R. Civ. P. 52(a), the Court makes the following findings of fact:

1.    Auffarth is a Nationwide insurance agent.  Tr. at 8:8-14.

2.    On April 1, 2005, she entered into a "Replacement Agency Executive Performance Agreement" (the "RAE") with Nationwide, under which Nationwide assigned her the rights to service policies of its retiring agents Beth Graham and Richard Seijack.  ECF No. 51-7, Ex. 1 [hereinafter "RAE"] (sealed).[2]

3.    Auffarth was to pay Nationwide $276,940.00 for the servicing rights.  RAE Arts. 2,3,5,7.  The payment was to be in two installments: a "First Payment" of $184,627 was due "within ten (10) days following the six (6) month anniversary of the effective date of [the RAE]," *i.e.*, October 10, 2005;[3] and a "Second Payment" of $92,313 was due "by the end of the 25th full calendar month following the effective date of [the RAE]," *i.e.*, May 31, 2007.  *Id.*, Art. 5.

4.    The RAE also stated that it would "continue until [Auffarth] satisfie[d] the Second Payment" and that

---

[2]    The RAE states that it is governed by Ohio law.  RAE Art. 13.

[3]    The effective date of the RAE was April 1, 2005.  RAE Art. 2.

"[e]xcept as otherwise indicated . . . , in the event of cancellation or termination of [the RAE] . . . [Auffarth] remain[ed] responsible for any financial obligation [she] incurred in relation to [the RAE]." *Id.*, Art. 2. Finally, the RAE stated that "[i]n addition to all other remedies that it may pursue Nationwide shall have the right to recapture any amount due to [it] from any future compensation due to [Auffarth]." *Id.*, Art. 12.

5.   On October 10, 2005--the due date for the First Payment--a Nationwide representative emailed Auffarth that it was "time for [her] to decide if [she] wanted to purchase the servicing rights," which could be done by obtaining financing through the Nationwide Federal Credit Union ("NFCU") or through outside financing. ECF No. 51-1 Ex. 11 (sealed). The email instructed Auffarth that if she had obtained outside financing she should "remit the first payment [of $184,627] in full to Nationwide Insurance" or she could reply within five days of the email that she did not want to retain the servicing rights." *Id.* The email warned that "[i]f the loan documents [for NFCU financing] are not secured or payment is not remitted within 45 days of this reminder, all future commission payments will be withheld and applied to the outstanding amounts due." *Id.*

6.   Auffarth emailed Nationwide Sales Manager Teresa Dippel to
     request that the price of the assignments under the RAE be
     reduced.  ECF No. 55-4 Ex. 28.  In her email to Dippel,
     Auffarth stated that the "[s]ignature for [her] loan [was]
     due," and she wanted "an email confirming . . . adjustments
     to the overall purchase price."  *Id.*  Auffarth did not sign
     the NFCU loan documents and instead awaited Nationwide's
     decision on her request to adjust the purchase price of the
     RAE.  ECF No. 51-13.  Dippel informed Auffarth on March 13,
     2006, that Nationwide would not adjust the RAE's purchase
     price.  ECF No. 55-4, Ex. 23.  Auffarth did not make the
     required payments or sign the loan documents.  *See id.*, Ex.
     29.

7.   In April 2008, Nationwide sent Auffarth a "final notice" of
     her "unfunded RAE commitment."  Pl's Ex. 2 at 2.  The final
     notice stated that Auffarth had a $276,941 balance due.  If
     the full balance was not paid by May 1, 2008,[4] Nationwide
     said it would "exercise its rights to initiate a 3 year (72
     installment) commission deduction plan to obtain payment .
     . . pursuant to the terms of [the RAE]."  *Id.*  Each
     deduction would be "in the amount of $4,269.99" and would
     include "an ongoing servicing fee."  *Id.*  Nationwide stated

---

[4] The letter stated that Auffarth needed to pay by May 1, 2007.
Auffarth testified that the year was a typo, "meaning May 1st of
2008."  Tr. 47:3-6.

that it had "elected not to pursue past due interest back to the date of when the initial payments were required." *Id.* A commission deduction schedule was attached to the letter, which showed that over the course of 72 bi-weekly commission deductions, Auffarth would pay a total servicing fee of $30,498.01--$423.58 per deduction. *Id.* at 3.

8.  The servicing fee was taken in lieu of interest. Tr. 25:2-4, 26:10-12.

9.  Auffarth did not agree to the servicing fee. Tr. 34:9-16.

10. Auffarth did not pay the full remaining balance, and on April 15, 2008, Nationwide began commission deductions.[5] Def's Ex. 1A at 3.

11. On May 21, 2008, Auffarth sued Nationwide in the Circuit Court for Baltimore City for breach of contract and related claims. ECF No. 2. Nationwide removed and counterclaimed for breach of contract. ECF Nos. 1, 11.

12. On September 8, 2008, while the parties were engaged in settlement negotiations, Auffarth wrote and sent a check to Nationwide's "home office" for $150,000 to "apply to [her] principal balance alleged outstanding." Pl's Ex. 1b at 7; Tr. 64:22-25, 65:4. With the check, she sent a memorandum to Nationwide manager Jennifer Rozanski, asking Rozanski to

---

[5] Auffarth testified that the first deduction was reflected in her paycheck dated May 15, 2008. Tr. 48:10-13.

apply the check "to [Auffarth's] alleged outstanding
balance with Nationwide" and give Auffarth "an updated
statement of future deductions." Pl's Ex. 1b at 8.
Nationwide did not cash the check, and told Auffarth that
she should communicate with Nationwide through her
attorney. Tr. 40:7-9, 63:21.

13. On September 19, 2008, the Court dismissed all but
Auffarth's declaratory judgment and breach of contract
claims. ECF No. 32.

14. On December 24, 2009, while settlement discussions and
litigation continued, Auffarth wrote a check to Nationwide
for $123,085, her remaining balance, and sent it to her
counsel, David Albright, Esq. Tr. 38:18-20, 58:9-10, 66:7-
8. Auffarth did not know whether Albright gave the check
to Nationwide, or provided it in discovery. Tr. 66:9-25,
67:1-21.

15. On June 30, 2010, the Court granted Nationwide's motion for
summary judgment on the two remaining claims against it and
on its counterclaim for breach of contract. ECF No. 70.
In that opinion, the Court held that:

    a. The RAE was a valid contract;

    b. Nationwide had performed its contractual duties;

    c. Auffarth had breached the contract; and

d. Nationwide had not waived the amounts due under the contract.  ECF No. 70 at 14-20.

16. As of June 30, 2010, Nationwide had collected $200,013 in principal and $22,026.62 in service fees.  *See* Pl's Ex. 2 at 3; Tr. 5:13-15.

17. On April 30, 2011, Nationwide made its last deduction from Auffarth's pay.[6]  Tr. 5:13-15.

18. Nationwide deducted $307,439.28 from Auffarth's paychecks in 72 installments of $4,269.99 each.  Tr. 59:21-24, 60:10-17; ECF No. 109 at 2..

19. On August 30, 2011, the Court denied Nationwide's motion for summary judgment on damages.  ECF No. 84.  The Court held that:

a. It had previously determined that Nationwide was entitled to damages;

b. Ohio law governs the award of damages;

c. "[A]s a matter of law, Nationwide is entitled to prejudgment interest on the RAE";

d. On March 13, 2006, $184,627 became due and subject to prejudgment interest;

---

[6] By the Court's calculation, if Nationwide took bi-monthly deductions from Auffarth's commissions from April 15, 2008 to April 30, 2011, Nationwide would have made 74 deductions, not 72, totaling $315,979.26.  However, Auffarth testified that Nationwide only made 72 deductions.  Tr. 59:21-24.

     e. On May 31, 2007, $92,313 became due and subject to prejudgment interest;

     f. It was disputed whether Ohio's statutory interest rate or Nationwide's "service fee" governed the rate of interest; and

     g. The Court could not "compute how each commission deduction--which included the possibly improper servicing fee--should offset the remaining principal balance on which prejudgment interest may continue to accrue." ECF No. 83 at 11-15.

20. On November 4, 2011, the parties submitted a jointly proposed pretrial order in which Auffarth argued that she had not breached the RAE, Nationwide had breached the RAE, she was entitled to compensatory damages, Nationwide had waived its right to prejudgment interest, the servicing fees were improper, and the RAE principal amounts became due on April 1, 2008.  ECF No. 89 at 1-3.

21. Ohio's statutory interest rate is 4% simple interest.  Tr. 6:1-18.

22. Nationwide stipulated that the 4% statutory rate should be used to calculate interest on the RAE debt, rather than the servicing fee that it had used.  ECF No. 89; Tr. 60:18-21, 61:3-8.

23.  Each party calculated prejudgment interest on the RAE debt. Def.'s Ex. 1a, 1b; Pl.'s Ex. 1-b, 1-c.  Contrary to the Court's prior order, Auffarth's calculations assumed that the full balance became due, and interest began to accrue, on May 1, 2008.  Pl.'s Ex. 1-b, 1-c.

24.  A bench trial was held on January 13, 2012.  ECF No. 103.

   a. Nationwide sought $1982.00 in prejudgment interest. Dippel testified that she calculated that amount based on 4% simple interest, calculated daily.  Def's Ex. 1b; Tr. 29:1-11.

   b. Auffarth argued that she had not consented to the servicing fee, and Nationwide should have accepted the checks she wrote them.  Tr. 34:8-16, 37:1-12.

   c. Neither party offered an expert to verify the accuracy of the calculations, and neither stipulated to the accuracy of the other's calculations.  *See* Tr.

25.  On February 24, 2012, the parties submitted proposed findings of fact.  ECF Nos. 106, 107.

26.  On March 5, 2012, this Court found that the parties' calculations of prejudgment interest were unreliable because they contained mathematical errors.[7]  It ordered the

_____

[7] For example, Auffarth assumed that interest did not accrue until May 1, 2008, contrary to the Court's August 30, 2011 opinion.  *See* ECF No. 83 at 14.  Nationwide's calculations

parties to submit new calculations and allowed the parties a response to the new proposals. ECF No. 108. The parties were to provide a new calculation and note the identity and qualifications of each person who had made a calculation. *Id.* at 2.

27. On March 19, 2012, the parties submitted their new calculations:

    a. Nationwide submitted the same calculations it had provided at trial, and restated Teresa Dippel's background in working with numbers. ECF No. 109.

    b. Auffarth accepted Nationwide's trial calculation, but argued that the Court should remove the first deduction from the calculations. She did not calculate the effect of the change on the total interest. ECF No. 110.

28. On April 2, 2012, the parties responded to the new calculations. ECF Nos. 111, 112.

    a. Nationwide conceded that it had erroneously "credited Auffarth with a payment she [had] not actually ma[d]e," argued that removing that payment would result in a larger interest accrual, but stated that

---

assumed that more than 72 deductions were made from Auffarth's pay. *See* ECF No. 111 at 2.

it would not seek more than the $1982.00 it had
requested at trial.  ECF No. 112 at 2.

b. Auffarth repeated her arguments that Nationwide is not
entitled to prejudgment interest, and she should be
awarded damages.  ECF No. 111.

29.  On April 19, 2012, Auffarth submitted a "reply" to
Nationwide's response.  ECF No. 113.

II.  Conclusions of Law

A.   Auffarth's Reply

Auffarth was not entitled to reply to Nationwide's response
to her proposed calculations.  *See* ECF No. 108.  Accordingly,
the reply will be struck.

B.   Waiver of Prejudgment Interest

Auffarth has continued to argue that Nationwide is not
entitled to prejudgment interest because it has waived its right
to interest.[8]  ECF No. 106 at 12.  On August 30, 2011, the Court

---

[8] Auffarth also suggests that Nationwide should forfeit its right
to prejudgment interest because, under Ohio's prejudgment
interest law, "[n]otification of the interest rate per annum
shall be provided pursuant to sections 319.19, 1901.313,
1907.202, 2303.25, and 5703.47" of the Ohio Revised Code.  ECF
No. 106 at 10 (*quoting* Ohio Rev. Code § 1343.03(A)).  However,
those sections require that the county auditor and tax
commissioner notify the clerks of the various state and
municipal courts of the annual rate, and that the clerks post
that rate near the courthouses to notify the public.  *See* Ohio
Rev. Code §§ 319.19 (county auditor must notify the clerk of the
court of common pleas and of each municipal and county court of
the interest rate), 1901.313 (clerk of municipal court must post
notice of the rate in a conspicuous place), 1907.202 (clerk of

determined that "as a matter of law, Nationwide is entitled to prejudgment interest on the RAE." ECF No. 83 at 13. That holding precludes Auffarth's argument that Nationwide is not entitled to prejudgment interest.[9]

C.   Collection of Prejudgment Interest Before Judgment

Auffarth has argued that Nationwide is not entitled to prejudgment interest on the money it collected from Auffarth before it obtained a judgment. ECF No. 106 at 11-12.

Under § 1343.03(A) of Ohio's Revised Code,

> when money becomes due and payable upon any . . .
> instrument of writing, . . . upon all verbal contracts
> entered into, and upon all judgments . . . for the
> payment of money arising out of . . . a contract . .
> ., the creditor is entitled to interest at the
> [statutory] rate . . ., unless a written contract
> provides a different rate of interest.

The award of prejudgment interest is a question of law. *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 691 n.27 (6th Cir. 2000).

---

county court must do the same), 2303.25 (clerk of the court of county pleas must do the same), 5703.47(C) (tax commissioner must notify the auditor of each county of the rate). Auffarth has not explained how Ohio's public notice requirement supports her argument.

[9] The letter stating that Nationwide had chosen not to seek interest on the debt stated that it would instead take a servicing fee. Pl.'s Ex. 2 at 2. The servicing fee would have been a substitute for interest; but Nationwide later agreed to apply the statutory interest rate as the servicing fee. Tr. 25:2-4, 26:10-12; *see also* ECF No. 83 at 15.

"In Ohio, prejudgment interest . . . 'acts as compensation and serves ultimately to make the aggrieved party whole.'" *The Scotts Co. v. Central Garden & Pet Co.*, 256 F. Supp. 2d 734, 742 (S.D. Ohio 2003) (*quoting Royal Elec. Constr. Corp. v. Ohio State Univ.*, 652 N.E.2d 687, 692 (Ohio 1995)). Prejudgment interest is awarded "on account of the loss which a creditor may be supposed to have sustained by being deprived the use of his money, [and] the gain being made from its use by the debtor." *Landis v. Grange Mut. Ins. Co.*, 695 N.E.2d 1140, 1142 (Ohio 1998) (*quoting Hogg v. Zanesville Canal & Mfg. Co.*, 5 Ohio 410, 424 (1832)).

Nationwide was deprived of the use of the money Auffarth owed from the due dates of the installments until Auffarth paid them through the commission deductions. *Cf. id.* Accordingly, it "is entitled to interest at the [annual] rate" of 4% for the funds, from the time they became due until Nationwide recouped them through the deductions. Ohio Rev. Code § 1343.03(A).[10]

D.   Offsets

Auffarth has argued that she should be credited for her two attempts to make lump sum payments to Nationwide, which would

---

[10] Nationwide will not be unjustly enriched by this interest because interest was calculated from each due date (March 13, 2006 for the first $184,627 and May 31, 2007 for the remainder) until it was paid back (the principal--on which interest was calculated--was reduced by $4,269.99 every two weeks between April or May 2008 and April 30, 2011). Interest did not accrue on funds that Nationwide had previously collected.

have reduced the interest she owed, because the RAE did not state that Nationwide could reject payments.  ECF No. 106 at 11.

As set-off is an affirmative defense, Auffarth bears the burden of proving her entitlement to a set-off.  *Milliken-Dees v. Salem City Sch. Dist. Bd. of Educ.*, 855 N.E.2d 932, 938 (Ohio. Ct. App. 2006).

The RAE reserved to Nationwide "the right to recapture any amount due to [it] from any future compensation due to [Auffarth]."  RAE Art. 12.  Accordingly, Auffarth consented to Nationwide's collection of the debt through commission deductions.  *Id.*

Under Ohio and Maryland law, if a "person against whom a claim is asserted proves that [she] in good faith tendered [a payment] to the claimant as full satisfaction of the claim . . . the claim is discharged" if the debtor shows that the payment "was tendered as full satisfaction of the claim."  Ohio Rev. Code Ann. § 1303.40; Md. Code, Comm. Law § 3-311.  Accordingly, had Nationwide accepted the September check for $150,000 (less than the alleged outstanding balance),[11] the Court may have treated the acceptance as an agreement to an accord and satisfaction which eliminated the remaining debt.  *See id.* Nationwide was entitled to reject what it may have considered an

---

[11] The memo line reads "apply to principal balance alleged outstanding."  Pl.'s Ex. 1b at 8.

14

offer of settlement for less than what it believed Auffarth owed.

Auffarth admitted that she did not know whether Nationwide had received the check she signed in December 2009.  Tr. 66:9-25.  She offered no evidence that Albright provided the check to Nationwide.  *Id.*  Accordingly, she has not shown that Nationwide wrongfully rejected the second check.

Auffarth is not entitled to set-offs for those offers of partial payment.

E.   Calculation of Prejudgment Interest

The parties continue to dispute the prejudgment interest due.  Auffarth has conceded that, if she is not entitled to set-offs, she would accept Nationwide's proposed interest calculation, but she argued that Nationwide's calculation incorrectly included an extra commission deduction.  ECF No. 110 at 2.  That argument is not helpful, as Auffarth did not provide a calculation based on the alleged error.

Nationwide conceded that its calculation table "credited Auffarth with a payment she did not actually make."  ECF No. 112 at 2.  Nationwide noted that because "this discrepancy would have resulted in an undeserved benefit [to Auffarth]," it has chosen not to pursue increased interest.[12]

---

[12] That Nationwide did not provide a correct calculation of prejudgment interest does not necessarily bar it from collecting

15

Both parties have failed to provide error-free calculations of the remaining interest Auffarth owes. However, the error in Nationwide's calculation reduced the remaining interest owed, by crediting Auffarth for a payment she did not make.[13] Correcting the error would result in a larger interest award to Nationwide. As Nationwide has sought no more than the $1982 it calculated based on the erroneous earlier payment, Auffarth will be ordered to pay Nationwide $1982 in prejudgment interest.

F.   Auffarth's Remaining Arguments

Affarth has repeated claims that Nationwide breached the contract, the commission deductions were improper, she did not breach and is entitled to damages, the debts were not due until

---

prejudgment interest. *See Terrell v. Terrell*, No. 15363, 1992 WL 150288, *3 (Ohio Ct. App. June 24, 1992) (prevailing party was entitled to judgment for statutory interest "without a specific calculation of the amount"). The Court could only deny Nationwide prejudgment interest if Nationwide offered *no* evidence of how to calculate it, *Stevens Skin Softener, Inc. v. Revco Drug Stores, Inc.*, 699 N.E.2d 549, 554 (Ohio Ct. App. 1997); here, instead, Nationwide offered evidence, but it was incorrect. *See also Vrable IV, Inc. v. SEIU Dist. 1188*, 784 F. Supp. 2d 846, 854 n.4 (S.D. Ohio 2011) ("As the prevailing party . . . has neglected to provide the correct calculation, the Court will apply the [statutory] interest rate[.]").

[13] By crediting Auffarth with a payment she did not make, before she actually started making payments, Nationwide reduced the principal that Auffarth owed--because it assumed that Auffarth had already paid some of it. Because interest accrued simply, Auffarth's lower balance (in Nationwide's erroneous calculation) meant that the amount of interest accruing at any time was smaller. Thus, the total interest owed--the sum of all of the accrued interest--would have been less than in a correct calculation in which Auffarth's principal was larger.

16

April 1, 2008, and Nationwide waived its right to payment after its agents erroneously told Auffarth that she owed no money.[14] The Court will not revisit its prior holdings. *See* ECF Nos. 69, 70, 99, 100, 108.

III. Conclusion

For the reasons stated above, Nationwide will be awarded $1982.00.


_____5/31/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[14] ECF No. 106 at 9-11.